**SAMSONITE CORPORATION, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 89–1346.**

United States Court of Appeals, Federal Circuit.

Nov. 16, 1989.

Rehearing Denied Jan. 12, 1990.

Suggestion for Rehearing In Banc Declined Jan. 25, 1990.

---

porated into the finished product shipped from Mexico to the United States. *Samsonite Corp. v. United States*, 702 F.Supp. 908 (Ct. Int'l Trade 1988). We affirm.

## I

The appellant, Samsonite Corporation, assembles luggage in Mexico and imports it into the United States. The case involves the deductibility of the cost of steel strips manufactured in the United States for Samsonite and shipped to Samsonite's assembly plant in Mexico. The Court of International Trade described the metal strips and Samsonite's use of them in assembling the luggage, as follows:

> [W]hen they left Tuscon [sic], the strips were straight, approximately 1⅞ inches wide and 55 inches long, with a pair of parallel rolled ridges running length-wise and some fourteen ⁹⁄₁₆-inch holes drilled along the centerline at specified distances and bearing a protective coat of oil. Their cost or value ranged from 95 cents to $1.26. After arrival at plaintiff's assembly facility in Nogales, the strips were (1) bent by machine into a form analogous to a squared-sided letter C, (2) cleansed of their oil coatings, (3) covered on the in-sides with vinyl sheaths and (4) riveted, on the open out-sides, to 6½ × 15⅜-inch sheets of plastic, which thereby became the bottom plates of completed "frame assemblies." These resulting, enclosed, rectangular-shaped assemblies were subsequently placed in, and fastened to, sewn bags of vinyl to form light-weight luggage commonly known now by such terms as "soft-side" or "carry-on."

702 F.Supp. at 909. The parties stipulated that upon importation the value of the imported luggage ranged from $18.57 to $25.37.

The Customs Service classified the imported merchandise as luggage under Item 706.62 of the Tariff Schedules of the United States and assessed the 20 percent ad valorem duty that that item provides, less the cost or value of certain components of

William D. Outman, II, Baker & McKenzie, of Washington, D.C., argued for plaintiff-appellant. With him on the brief was Thomas Peele.

Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Kenneth N. Wolf.

Before FRIEDMAN, Senior Circuit Judge,[*] BISSELL and MAYER, Circuit Judges.

FRIEDMAN, Senior Circuit Judge.

This is an appeal from a judgment of the United States Court of International Trade upholding the denial by the Customs Service of a deduction from assessed duties of the cost of an item that had been manufactured in the United States and, after undergoing certain changes in Mexico, was incor-

[*] Judge Friedman took senior status on November 1, 1989.

the luggage that had been manufactured in the United States. The latter deduction was made pursuant to Item 807.00 of those schedules, which provides that:

Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting ...

are subject to "[a] duty upon the full value of the imported article, less the cost or value of such products of the United States...." Tariff Schedules, Item No. 807.00, 19 U.S.C.A. § 1202 (West 1978).

The Customs Service denied a deduction from the value of the luggage (which Samsonite concedes was properly classified under Item 706.62) for the cost of the steel strips.

The Court of International Trade upheld Customs' denial of the deduction. The court held that the steel strips "were not exported in condition ready for fabrication." 702 F.Supp. at 910. It found that the "bending process" to which the strips were subjected "did more than 'adjust' the article. The process created the component to be assembled, the essence of which is its configuration. Without the resultant shape, the plastic plate could not be attached so as to constitute the bottom, and the completed frames could not be inserted into plaintiff's bags, thereby imparting the intended overall form and structural stability of the finished luggage." 702 F.Supp. at 910 (footnote omitted).

The court concluded:

To summarize, the bending in question was not incidental to assembly of a fabricated component exported from the United States in condition ready for assembly without further fabrication. The presumption of correctness that attached to the denial of plaintiff's protest by the Customs Service stands, and judgment must therefore enter in favor of the defendant.

702 F.Supp. at 911.

## II

To obtain a deduction for American-fabricated articles assembled abroad, the components (a) must have been exported from the United States "in condition ready for assembly without further fabrication," (b) not have lost their physical identity in the articles by change in form, shape or otherwise, and (c) not have been advanced in value or improved in condition "except by being assembled" and except "by operations incidental to the assembly process such as cleaning, lubricating, and painting." Item No. 807.00. As the Court of International Trade correctly pointed out, since the "foregoing three conditions for a deduction are set forth in the conjunctive, ... each must be satisfied before a component can qualify for duty-free treatment." 702 F.Supp. at 909. We agree with that court that the steel strips involved in this case did not meet those conditions.

The critical inquiry is whether the bending and shaping that the strips underwent constituted "fabrication" or mere assembly and operations incidental to the assembly process. We hold that what was done to the strips in Mexico was fabrication and not mere assembly.

When the steel strips were exported from the United States, they were just that: 55-inch strips that could not serve as the frame of the luggage without undergoing a complete change in shape. Prior to assembling the luggage, the strips were bent by machine into a carefully and specially configured rectangular shape that was necessary before the original strip would serve its ultimate function as part of the frame of the luggage.

In short, what emerged after the bending operation was a different object from that which left the United States. The latter was a steel strip; the former was a metal frame for a piece of luggage. The transformation of the strip in this manner into a luggage frame was a fabrication.

The strips therefore had not been exported from the United States "in condition ready for assembly without further fabrication."

Samsonite contends, however, that prior decisions of the Court of Customs and Patent Appeals require a contrary conclusion. It relies particularly on *General Instrument Corp. v. United States*, 499 F.2d 1318 (CCPA 1974). That case involved wire wound on spools that had been exported from the United States to Taiwan. There the wire was removed from the spools, formed into a horizontal coil by a winding machine, taped to prevent unraveling, dipped in cement, dried, precision shaped, removed from the spools and wound around a core. The end product made from the wire was a component of a television set that was imported into the United States.

The Court of Customs and Patent Appeals held that: "The steps performed upon the wire after its exportation to Taiwan are not 'further fabrication' steps, but rather assembly steps within the meaning of item 807.00." 499 F.2d at 1320.

Samsonite argues that far more was done to the wire in *General Instrument* than was done to the steel strips in this case. It argues that if the processing the wire underwent in *General Instrument* was not "fabrication," *a fortiori* "the one simple-minded act of bending a straight frame into a 'C' " was neither "a 'further fabrication' " nor "a non-incidental operation."

The critical inquiry in determining whether fabrication rather than mere assembly took place here, is not the amount of processing that occurred in the two cases, but its nature. In *General Instrument*, the wire, when it left the United States and when it returned as part of a finished product, was a coil. The wire was taken directly from the supply spool on which it was wound and, after processing, was used in assembling the TV set components. The wire underwent no basic change in connection with its incorporation into the television set component.

In contrast, in the present case the steel strips had to undergo a significant change in shape before the actual assembly of luggage could begin. Until the steel strips had been made into "C" shapes they could not be used as a part of the luggage. Unlike the "assembly" that the court in *General Instrument* held the processing of the wire involved, here "further fabrication" of the steel strips was required in order to change them into frames for luggage, before the assembly of the luggage could take place.

Samsonite makes a number of other arguments, some of which become moot as a result of our decision on the fabrication issue. The Court of International Trade discussed and properly rejected the remaining arguments in its opinion. There is no occasion for us to repeat that court's analysis.

## CONCLUSION

The judgment of the Court of International Trade dismissing the action is

AFFIRMED.

BISSELL, Circuit Judge, dissenting.

I disagree with the majority's attempt to distinguish *General Instrument Corp. v. United States*, 499 F.2d 1318 (CCPA 1974), on the basis that the wire in that case left and returned to the United States coiled on spools. If despooling, forming, taping, cement-dipping, drying, and then precision-shaping does not constitute "further fabrication," *id.* at 1319–20, and if drawing from supply spools, cutting, stripping, weaving, and then securing with tape is not "further fabrication," *id.*, I do not see how Samsonite's bending, cleansing, covering with sheaths and then assembling to plastic can be "further fabrication" here. Accordingly, I would reverse the United States Court of International Trade's judgment upholding the Customs Service's denial of the deduction.